**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

SALUS CAPITAL PARTNERS, LLC; HRG  GROUP, INC.; KYLE
SHONAK; AARON  MILLER and DOES 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

DAVID ZINBERG, MARINA ZINBERG

**FILED**
Superior Court of California
County of Los Angeles

**MAY 3 1 2018**

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
R. Clifton

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado.  Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): Superior Court of California - West<br><br>1725 Main Street<br>Santa Monica, CA 90401 | CASE NUMBER:<br>(Número del Caso):<br>**SC129349** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):

Lester Winograde, Esq., 245 Main Street, Suite 113, Venice, CA 90291, (310) 226-6864

| | | | |
|---|---|---|---|
| DATE:<br>(Fecha) **MAY 3 1 2018** | Sherri R. Carter, Clerk | Clerk, by<br>(Secretario) _____ | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

[SEAL: SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1  Lester Winograde, Esq. (SBN 171581)
   Law Offices of Lester Winograde, APC
2  245 Main Street, Suite 113
   Venice, CA 90291
3  Lesterwinograde@verizon.net

4  Telephone: (310) 226-6864
   Facsimile:  (310) 399-1659

5

6

**FILED**
Superior Court of California
County of Los Angeles

MAY 3 1 2018

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
R. Clifton

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9             FOR THE COUNTY OF LOS ANGELES - WEST DISTRICT

10                          UNLIMITED JURISDICTION

11

12  DAVID ZINBERG, MARINA  ZINBERG  )      CASE NO.:  **SC129349**

13                    Plaintiffs       )      COMPLAINT FOR:
                                       )
14             vs.                     )      1)    LENDER LIABILITY FOR
                                       )            BREACH OF CONTRACT;
15  SALUS CAPITAL PARTNERS, LLC;       )      2)    UNLAWFUL BUSINESS
    HRG  GROUP, INC.; KYLE SHONAK;     )            PRACTICES; and
16  AARON  MILLER and DOES 1 through   )      3)    UNJUST ENRICHMENT
    20, inclusive                      )
17                                     )      DEMAND FOR JURY TRIAL
                                       )
18                    Defendants.      )
                                       )
19

20       Plaintiffs, DAVID ZINBERG AND MARINA ZINBERG, files a Complaint herein

21  against Defendants, and each of them, as follows:

22                               **PARTIES**

23       1.    Plaintiff MARINA ZINBERG  was, at all times relevant to this complaint, an

24  individual doing business in Los Angeles County, State of California.

25       2.    Plaintiff DAVID ZINBERG was, at all times relevant to this complaint, an

26  individual doing business in Los Angeles County, State of California.

27       3.    Defendant SALUS CAPITAL PARTNERS, LLC ("Salus"), is a Delaware limited

28  Liability Partnership doing business in Los Angeles County.

                                     1
                  ─────────────────────────────────
                              COMPLAINT

**CASE MANAGEMENT CONFERENCE**

11/27/18
Date

Dept K        8:30 am

JUDGE GERALD ROSENBERG

4.    Defendant HRG GROUP, INC. ("HRG") is a Delaware corporation doing business in Los Angeles County and formerly doing business as Harbinger Group.

5.    Defendant KYLE SHONAK, is an individual residing outside California but during times mentioned herein doing business within Los Angeles County, California.

6.    Defendant AARON MILLER, is an individual residing outside California but during times mentioned herein doing business within Los Angeles County, California.

7.    Plaintiff is unaware of the true identities of the Defendants sued as DOES 1 through 10 herein, and therefore sues them with fictitious names as "Doe" Defendants. Plaintiff alleges that each Defendant, including but not limited to each "Doe" Defendant, is and at all times alleged herein was, liable to Plaintiff.

8.    Plaintiff is informed, believes, alleges that at all relevant times to this lawsuit, each of the Defendants was and now is the agent, servant, employee, representative, and/or alter ego of each of the other Defendants, and in doing the things mentioned hereinafter, was acting within the scope of his/her authority as such agent, servant, employee, representative and/or alter ego, with the permission and consent of the remaining Defendants.

9.    Plaintiff is informed and believes that HRG is the alter ego of Salus, in that HRG dominated, influenced and controlled Salus, provided the capital that funded Salus loans, including the loan at issue in this Complaint, such that at all times herein mentioned, there existed and now exists a unity of interest and ownership between HRG and SALUS, such that the individuality and separateness of HRG and Salus has ceased to exist. Specifically, HRG was the parent company of Salus and directed Salus's operations through Omar Asali (CEO of HRG during the time period at issue), Brendan Doyle (General Counsel and Compliance Officer for HRG), Aaron Miller and Kyle Shonack. Harbinger/HRG made all capital decisions about Salus's loan described herein via Aaron Miller Kyle Shonack and Omar Asali. Harbinger, HRG and/or another company controlled by it funded the money for Salus's loan/line of credit at issue herein. In addition, Brendan Doyle (a Harbinger/HRG employee) winded down Salus's operations after Asali made the decision to shut Salus down. By virtue of the foregoing, adherence to the fiction

2

of separate corporate existence would, under the circumstances, sanction a fraud and promote injustice in that Plaintiff would be unable to realize upon any judgment in his favor.

## JURISDICTION AND VENUE

10.     Jurisdiction is proper in this Court as the amount in controversy exceeds $25,000 and the causes of action arose within this Court's jurisdiction.

## FACTUAL BACKGROUND

11.     David Zinberg was the founder and CEO Bidz.com, Inc. ("Bidz").  Bidz owned and operated Bidz.com which was an online jewelry, accessories and fashionwear auction website and marketplace from 1998 to 2014.   During this time span, Bidz sold over one billion dollars worth of merchandise.

12.     Bidz largest jewelry supplier during its existence was Los Angeles Jewelry Production, Inc. ("LAJ").  LAJ is owned, operated and controlled by the Aframian family which primarily consists of Emanual Aframian, Houshang Aframian, Behrouz Aframian and Saied Aframian (collectively, the "Aframians").  LAJ and Bidz did hundred of millions of dollars of business over the years with Saied Aframian and David Zinberg being the principals handling these transactions for their respective companies.

13.     By 2007 Bidz was a publically traded company and in 2008 Bidz was profitable with sales of over $200 million dollars and had over 200 employees worldwide.  Unfortunately, with the severe recession and other market and business factors, in 2009 and thereafter Bidz began a downwards trend in sales but was still purchasing large quantities of jewelry from LAJ. LAJ and LAJ's officers (the Aframians) would loan money to David Zinberg at times from 2009 through 2011. This was often documented via promissory notes by David Zinberg and/or his sister, Marina Zinberg who was also an executive at Bidz.

14.     In total, there were three different loans from the Aframians to the Zinberg's for a total of $1,000,000. Given the extensive amount of business that Bidz gave to LAJ over the years, David Zinberg and Saied Aframian thereafter agreed that any of these loans would become debts of Bidz.

3

15.    In November, 2012 Bidz and its subsidiary, Modnique.com, Inc ("Modnique") were taken private via a merger transaction with Glendon Group, Inc. ("Glendon").  LAJ and the Aframians participated in a series of transactions that assisted with closing this merger.  Glendon and Bidz  thereafter agreed to be responsible for any of the outstanding debts of the Zinbergs to LAJ or the Aframians.

16.    On or about June 26, 2013 Bidz, Modnique and Glendon ("Glendon Companies") signed secured credit agreements with Defendant Salus Capital Partners, LLC ("Salus").  In total, the Glendon Companies were to receive approximately $24 million dollars in loan and/or credit line from Salus.  As part of this transaction, Salus mandated that Modnique acquire another of Salus' distressed creditors, an online retailer named Totsy for approximately $8 million dollars which was far more than it was actually worth.  This Totsy purchased was forced upon the Glendon Companies as a condition to receive the line of credit.  Salus then secured approximate $24 million dollars in financing or assumed debt for the Glendon Companies by placing a lien on the inventory and assets of these companies.

17.    Unbeknownst to Zinberg and the Glendon Companies, at this time Salus had previously sought to obtain a commercial lending license from the State of California, twice applying for a license through the California Department of Business Oversight ("DBO"). Although Salus retained seasoned counsel (Greenburg Traurig) to oversee the licensure, DBO never issued a license due, on information and belief, to Salus's affiliation with the Harbinger Group (now HRG Group, Inc.), which was Salus's capital provider. On information and belief, DBO was unwilling to license Salus because the U.S. Securities and Exchange Commission had investigated Harbinger's founder, Phil Falcone, for securities fraud (Mr. Falcone ultimately entered into a settlement agreement to resolve the charges).

18.    Although Salus never received a commercial lending license, Salus, under the direction of acting President Kyle Shonak, and the CEO of Harbinger/HRG Group, Omar Asali, continued to lend to the Glendon Companies and other California companies in violation of Financial Code section 22700 et seq.

4

19.     On September 6, 2013 an agreement to deliver jewelry in exchange for payments and mutual releases was entered between LAJ, Bidz and Glendon and their respective affiliates ("Agreement").    Pursuant to this Agreement, Glendon, Bidz and LAJ agreed that LAJ and would deliver approximately $2,800,369.18 million dollars worth of jewelry to Bidz in exchange for a series of payments for $3,924,398.41. There were to be 10 payments of $392,439.84.  The extra million dollars in payments was necessary to cover the inter-company debts owed from Bidz to LAJ.  Per the Agreement, "affiliates" included each of the respective parties shareholders, officers, directors, employees, assigns, etc.  As such, the Aframians and the Zinbergs were legally included in this Agreement.   A true and correct copy of this agreement is attached hereto as Exhibit 1.

20.     Glendon/Bidz made the first two $392,439.84 payments in November, 2013 and December, 2013.  Thereafter, Salus would not allow Glendon or Bidz to have the funds available to make any further payments which would have been $3,139,518.70.   In addition to the over $3 million on cash payments, Salus was also able to eventually reap the benefit of the $2.9 million in LAJ inventory.  The reason for this was because by early 2014 Salus began to assert direct operational control over Glendon and Bidz, acting entirely outside of their capacity as lenders, and running the Company to ruin, solely to privilege their interests as lenders and line their own pockets rather allow the Glendon Companies to run the business and pay their creditors.

21.     In early 2014 Salus actually installed its own personnel at Bidz to make all of the Glendon Companys' financial buying decisions and merchandise plans. Salus also took it upon themselves to make employee decisions; oversaw inventory and controlled the money flow of the companies.

22.     Salus did this to ensure that they could enrich themselves at the highest level in the eventual liquidation of Bidz and Modnique that were already planning.  Pursuant to this scheme, Salus refused the Glendon Companies' employees to pay vendors for merchandise without approval from Salus' personnel.  This was also extended to any other creditors such as LAJ, Federal Express, attorneys, employee reimbursements, etc.

5

23.     Salus routinely sent its own personnel (based in Boston) and hired other personnel to come to the Glendon Companies offices in the Los Angeles.  Salus stated the personnel were present to assist with smooth operations and to assist with reorganizing and consolidating the Glendon Companies.

24.     On information and belief, Salus failed to act in a commercially reasonable manner when it asserted operational control over the Glendon Companies because there are significant conflicts of interest when a lender acts as an investor in a company and asserts operational control. Specifically, Salus was a purported "asset-based lenders," meaning that if its borrowers ultimately become unable to repay the loans, Salus recoups value by selling off the borrower's inventory.

25.     Salus' operational control over the Glendon Companies was really just a strategy to pump up assets and bank account before liquidating of Bidz and Modnique. Salus and HRG engaged in a fraudulent scheme to continue sales while failing to pay all vendors, creditors and even customer merchandise and returns priors to the liquidation. Even when there was a clear default on the loans, Salus refused to report such a default to its and HRG's financial benefit.

26.     At this point, Glendon CEO and Bidz CFO informed David Zinberg that they could not pay the remaining LAJ payments because Salus would not allow or approve Glendon or Bidz to pay them.  By April 2014, Salus was exercising exercise complete control over Bidz and Modnique.   Salus had placed outside accounting personnel from the firm of Pricewaterhouse Coopers LLP ("PWC") were directly within the Bidz and Modnique offices.  All payments to vendors and outside parties had to be approved by Salus and/or PWC personnel.  Business decisions were being  dictated to Bidz management by Salus.  Salus employees or agents were directly involved with running of the day to day business of both Bidz.  Salus was also involved with making decisions on employee terminations.  While Salus was approving Glendon payments to Salus' attorneys and other personnel, it would not allow the payment of money owed to LAJ.   Salus refused to allow Glendon or Bidz to pay LAJ.  Meanwhile, both Bidz and Modnique were operating their businesses, selling merchandise, accepting money from customers as normal.

COMPLAINT

27.    In mid-June 2014 Salus orchestrated the firing of CEO David Zinberg. Immediately thereafter, Salus had the new acting CEO and Directors of Bidz execute an Assignment for Benefit of Creditors under California law in favor of Defendant, Insolvency Services, Group, Inc. ("ISG").   As the senior secured creditor, Salus was eventually paid all of the money that was in the Bidz bank accounts.

## FIRST CAUSE OF ACTION FOR
## SECURED LENDER LIABILITY - BREACH OF WRITTEN CONTRACT
### (Against all Defendants)

28.    The allegations contained in the above paragraphs of this complaint are hereby incorporated by this reference as if fully set forth again herein.

29.    In June, 2013 Salus was simply a secured lender to Bidz and Modnique.  Yet, as described above, at the time LAJ was demanding payment for past money due under their Agreement, Salus was acting far beyond that of a typical secured lender.  Salus was exercising complete domination and control over the Bidz business operations.  By law, Salus had thus assumed responsibility of Bidz and had stepped into the shoes of Glendon/Bidz.

30.    Salus' control and domination was so complete that Bidz and Modnique exercised no independent corporate judgment on various material matters, including, without limitation, payments to third parties, control of virtual inventory program, employee decision and corporate strategy.  Salus exercised such control over the borrower's day-to-day operations that, in effect, the lender became the borrower.

31.    Salus' domination over the companies gave rise to fiduciary duties of care and loyalty owed to the creditors and employees of Bidz.  In essence, under the instrumentality theory, a lender such as Salus may expose itself to direct liability to the borrower and third parties where the lender exercises such control over the borrower's day-to-day operations that, in effect, the lender becomes the borrower. Under these circumstances, Salus stepped into the shoes of Bidz for responsibility on the LAJ Agreement.

32.    Salus' domination and control over Bidz and Modnique resulted in damages to its non-insider creditors who were owed payments in the normal course and scope of the business.

7

COMPLAINT

Specifically, despite knowing that Bidz and Glendon owed the money to LAJ as called for per the Agreement, Salus refused them to make payments of money owed.  By the February, 2014 this amount was $3,103,793.70.   Meanwhile during the preceding and following months, Salus was authorizing other payments to creditors, including other attorney's, but was only doing so to gain an immediate benefit and not for debts owed by Glendon, Bidz and/or Modnique.

33.    Glendon and Bidz would have fully performed all condition, covenants, obligations and promises required on their part in accordance with the terms of the Agreement, except insofar as they been prevented or excused from having to perform such conditions, covenants, obligations and promises by Salus' breaches, or otherwise by operation of law.

34.    Salus failed and refused to perform on the obligations of payment under the agreement.  Such failure to pay constituted a material breach of the agreement.  HRG is liable for Salus's fraudulent, unfair and unlawful conduct by virtue of the fact that it is Salus's alter ego.

35.    As a direct and proximate result of Salus' material breaches of the Agreement, Marina Zinberg has suffered and will continue to suffer damages, Specifically, because of the breach of the LAJ Agreement, Zinberg has been sued by the Aframians and for $307,726.03 and LAJ for $397,789.04 (total of $705,515.07)  plus interest from April 19, 2017 and attorney's fees.

36.    As a direct and proximate result of Salus' material breaches of the Agreement, David Zinberg has suffered and will continue to suffer damages, Specifically, because of the breach of the LAJ Agreement, David Zinberg has been sued by the Aframians for $820,604.74 plus interest from April 19, 2017 and attorney's fees.

**SECOND CAUSE OF ACTION FOR**

**UNLAWFUL BUSINESS PRACTICES**

**(Against all Defendants)**

37.    The allegations contained in the above paragraphs of this complaint are hereby incorporated by this reference as if fully set forth again herein.

38.    California's Unfair Competition Law, (hereinafter "the UCL"), *Business and Professions Code* § 17200, et seq., defines unfair competition to include any unlawful, unfair,

8

or fraudulent business act or practice. The UCL authorizes any person to bring an action for relief under the statute acting for the interest of the general public. In such an action, the court is authorized to order injunctive relief, declaratory relief, disgorgement of wrongful gains and restitution as remedies for any violations of the UCL.

39.     Salus has committed acts of unfair, unlawful, and fraudulent business activity, as defined by California Business and Professions Code § 17200, by   engaging in the acts and/or practices described above.

40.     Specifically, Salus has, among other things:

(a) Loaned monies to Glendon, Bidz and Modnique  without a commercial lending license required by California Financial Code section 22780. Specifically, on information and belief, at the time before and after this loan Salus made more than ten loans per year to California-based companies and actively pursued hiring a business development officer to pursue even further lending opportunities in California, even though it had twice been rejected for a license by the State of California;

(b) Acted in a commercially unreasonable manner by taking direct operational control over the Glendon Companies, even though they had direct conflicts of interest as asset-based lenders.

(c) Operated Bidz and Modnique for the sole purpose of increasing their security and recoverable capital and refusing to pay vendors, employees and creditors of the Glendon Companies.

41.     Salus engaged in a pattern of acts of unfair competition proscribed by the UCL, including the practices alleged herein.  Salus' exerting improper control over companies to whom they act as a borrower and force them not to pay creditors in order to preserve capital for them selves is unlawful.

42.     The business acts and practices of Salus, as herein above alleged, constitutes unlawful business practices in that said acts and practices violate the provisions of Civil Code § 1749.5, Civil Code § 1770(a)(14) and common law.

9

43. HRG is liable for Salus's fraudulent, unfair and unlawful conduct by virtue of the fact that it is Salus's alter ego.

44. As a direct and proximate result of the acts and practices described herein, Salus has received and collected monies which Salus is not entitled. Salus has profited wrongfully from the collection of these monies. Such funds properly belong to Plaintiff and other similar creditors who were subjected to improper and unlawful actions of Salus

45. Pursuant to *Business and Professions Code* § 17203, the Court should issue an order enjoining Salus from engaging in such acts and practices, and ordering that Salus be disgorged all ill-gotten gains and provide appropriate restitution. Plaintiffs also seek an accounting by a referee under the administration of the Court to determine the amount to be disgorged and refunded.

46. In addition, pursuant to Code of Civil Procedure § 1021.5, Plaintiff seeks recovery of attorneys' fees, costs, and expenses incurred in the investigation, filing, and prosecution of this action.

**THIRD CAUSE OF ACTION FOR**

**UNJUST ENRICHMENT**

**(Against SALUS, HRG and DOES 1 through 20)**

47. The allegations contained in the above paragraphs of this complaint are hereby incorporated by this reference as if fully set forth again herein.

48. As a result of their acts and omissions alleged herein Salus was unjustly enriched. HRG is liable for Salus's fraudulent, unfair and unlawful conduct by virtue of the fact that it is Salus's alter ego.

49. Such unjust enrichment has violated Plaintiff's rights. Plaintiff has been damaged by the effect of such unjust enrichment in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for and requests relief as follows:

1. On the the first cause of action that the Court find that Salus was legally responsible for paying on the Agreement, and that Plaintiff is therefore entitled to actual and compensatory damages in the sum of $705,515.07 for Marina Zinberg, together with accrued and

1   unpaid prejudgment interest, plus post-judgment interest thereon at the legal rate until paid in full

2   and for $820,604.74 for David Zinberg plus interest from April 19, 2017 and attorney's fees.

3       2.   On the second cause of action that the Court find that Salus operated unlawfully in

4   California and the Court shall award remedies of restitution and disgorgement in an amount of

5   $3,103,793.70 or otherwise according to proof at trial.

6       3.   On the third cause of action that the Court find that HRG and Salus were unjustly

7   enriched in an amount of $3,103,793.70 or otherwise according to proof at trial.

8       4.   On all applicable causes of action, Plaintiffs are entitled to an award of pre-

9   judgment and post judgment interest;

10      5.   Plaintiffs are entitled to an award of attorney's fees and costs associated with this

11  litigation;

12      6.   All restitutionary remedies and equitable relief allowed on applicable causes of

13  action; and

14      7.   Such other and further relief as may be just and proper.

15

16  DATED: May 31, 2018                      LAW OFFICES OF LESTER WINOGRADE. APC

17

18                                          Lester Winograde, Esq.
                                            Attorney's for Plaintiffs
19

20

21

22

23

24

25

26

27

28

11

COMPLAINT

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department K

**SC129349**                                                    November 27, 2018
**DAVID ZINBERG VS SALUS CAPITAL PARTNERS, LLC**                8:30 AM
**ET AL**

Judge: Honorable Gerald Rosenberg          CSR: None
Judicial Assistant: M. Lee                 ERM: None
Courtroom Assistant: R. Juarez             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Case Management Conference

The matter is called for hearing.

Plaintiff fails to appear and the Court finds that there are no proofs of service filed.

Order to Show Cause Re: Dismissal is scheduled for 12/20/2018 at 08:30 AM in Department K at Santa Monica Courthouse.

Clerk to give notice.

Certificate of Mailing is attached.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
### Civil Division
West District, Santa Monica Courthouse, Department K

**SC129349**                                                    December 20, 2018
**DAVID ZINBERG VS SALUS CAPITAL PARTNERS, LLC**                          8:30 AM
**ET AL**

Judge: Honorable Gerald Rosenberg          CSR: None
Judicial Assistant: P.Anyankor             ERM: None
Courtroom Assistant: R. Juarez             Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Dismissal

The matter is called for hearing.

There being no appearances, the Court rules as follows:

The Court orders the Complaint filed by DAVID ZINBERG on 05/31/2018 dismissed without prejudice.

Clerk is to give notice.

Certificate of Mailing is attached.

Electronically FILED by Superior Court of California, County of Los Angeles on 06/19/2019 09:50 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Mariscal, Deputy Clerk

Lester Winograde, Esq. (SBN 171581)
Law Offices of Lester Winograde, APC
245 Main Street, Suite 113
Venice, CA 90291
Lesterwinograde@verizon.net

Telephone: (310) 226-6864
Facsimile: (310) 399-1659

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES - WEST DISTRICT

### UNLIMITED JURISDICTION

| | |
|---|---|
| DAVID ZINBERG, MARINA ZINBERG | CASE NO.: SC129349 |
| Plaintiffs | EX PARTE MOTION TO SET ASIDE DISMISSAL, MEMORANDUM OF |
| vs. | POINTS & AUTHORITIES; DECLARATION OF LESTER WINOGRADE; PROPOSED ORDER |
| SALUS CAPITAL PARTNERS, LLC; HRG GROUP, INC.; KYLE SHONAK; AARON MILLER and DOES 1 through 20, inclusive | Date:  June 20, 2019 Time:  8:30 a.m. Dept.:  R |
| Defendants. | |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that, on June 20, 2019, at 8:30 a.m., or as soon thereafter as this matter can be heard in Department R of the above-entitled Court, located at 1725 Main Street, Santa Monica, California 90401, Plaintiffs, David Zinberg and Marina Zinberg, (hereinafter "Plaintiffs") will move ex parte to vacate and set aside the dismissal entered by this Department and served on December 21, 2018 and becoming effective December 26, 2018.  The motion will be made on the ground that the dismissal was taken against Plaintiffs as the result of

1

the mistake, inadvertence, and excusable neglect of Plaintiffs' attorney, Lester Winograde, who has executed a declaration under penalty of perjury attesting to this fault.

This motion will be based on this notice of motion, memorandum of points and authorities served and filed herewith, the accompanying declaration of Lester Winograde, the records and file herein, and on such evidence as may be presented at the hearing of the motion.

DATED: June 18, 2019                    LAW OFFICES OF LESTER WINOGRADE. APC

Lester Winograde, Esq.
Attorney's for Plaintiffs

2

EX PARTE MOTION TO SET ASIDE DISMISSAL

**MEMORANDUM**

**1.   STATEMENT OF FACTS**

Plaintiffs' case is based on theories of lender liability and unlawful business practices by a commercial financial lender and its parent company and officers.  The Complaint was filed on May 31, 2018.  The wrongful actions of defendants in this case are related with another series of cases with the Plaintiffs and other third parties currently being litigated in Santa Monica Courthouse.

The present case was filed by Plaintiffs' counsel to ensure there was no statute of limitations issues with the intent to procure new counsel as Plaintiffs' counsel was involved in the underlying business matters between the parties alleged in the Complaint and he may eventually end up as a witness.

As such, in June, 2018 Plaintiffs' counsel met with another counsel to substitute into this case and in fact gave him a signed substitution.  Thereafter, Plaintiff's counsel thought the matter was being handled as he signed a substitution.  Plaintiffs' Counsel made a mistake in making assumption that the substitution occurred as the other counsel did not substitute in to the case.

Plaintiffs' counsel thereafter neglected to follow-up on the status of the case. This Court dismissed the case on December 20, 2018 and the clerk mailed out notice in December 21, 2018 with the effective date of the dismissal being December 26, 2018.

When speaking with Plaintiffs counsel on the related matter last week, Plaintiffs' counsel first learned of the mistake about this case being dismissed.  Plaintiffs desire to continue to pursue the matter and counsel in the related case has agreed to substitute into the case and serve defendants up this Motion being granted.

**LEGAL ARGUMENT**

**2.   THE COURT SHOULD GRANT PLAINTIFFS' MOTION TO SET ASIDE THE DISMISSAL UNDER THE MANDATORY PROVISIONS OF C.C.P §473(b) BECAUSE PLAINTIFF'S MOTION IS TIMELY, IN PROPER FORM, AND ACCOMPANIED BY ATTORNEY'S  SWORN AFFIDAVIT OF FAULT.**

3

Under the mandatory relief provisions of *C.C.P.* § 473(b), the court is required to grant relief from dismissal whenever the motion is: (1) accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, (2) in proper form, and (3) made no more that six months after entry of judgment. To obtain relief under these provisions, "counsel need not show that his or her mistake, inadvertence, surprise, or neglect was excusable. Attestation that one of these reasons existed is sufficient to obtain relief." *Yeap v. Leake* (1997) Cal.App.4th 591, 601. "The only exception to mandatory relief is when the trial court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect" *Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481. The current version of the law requires no timeliness or diligence requirement other than that the application be made within six months after judgment. *Id.* The purpose of this statute is to relieve the innocent client of the burden of the attorney's fault, to impose burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits. *Yeap* at 1487.

In *Yeap*, a plaintiff brought a medical malpractice action, which was later sent to arbitration. Plaintiff's counsel failed to properly calendar the arbitration hearing date and then failed to request a trial de novo in a timely fashion after receiving notice of the zero arbitration award. *Id.* at 594-599. Consequently, that case was dismissed. The court held that the mandatory provision of *C.C.P.* §473(b) was specifically applicable and vacated the dismissal. In reaching its decision, the court reasoned that but for the mistakes of plaintiffs counsel, the case would have proceeded to arbitration on the merits. Further, there was nothing to suggest that client was in any way responsible for the calendaring errors or that the errors represented a deliberate strategic decision. *Id.* at 601-602

Yeap is plainly applicable to the present case. Plaintiff' counsel admittedly failed to appear at a hearing due to his mistake in believing the other attorney was taking over the case and neglecting any follow-up.  Furthermore, Plaintiffs were in no way responsible for this mistake and neglect and there is no evidence that the errors were somehow manufactured as a strategic decision. Therefore, since Plaintiffs' attorney brings this motion before the six month deadline from the effective service of the dismissal of December 26, 2018 and accompanied by a sworn

4

1  affidavit as the cause of the dismissal, the court must grant relief and set aside the dismissal

2  order.

3        Finally, Defendants will suffer no prejudice from the relief sought other than delay.   The

4  Court should also take into consideration the general policy favoring a trial on the merits

5  Accordingly, Plaintiffs respectfully request the Court to follow the legislative scheme as well as

6  exercise its inherent equitable power and grant an order setting aside the dismissal.

7  **CONCLUSION**

8  In view of the foregoing authorities and facts, it is respectfully requested that the Court enter an

9  order vacating/setting aside the entry of default/default judgment against Defendant June Kim

10

11

12  DATED: June 18, 2019                         LAW OFFICES OF LESTER WINOGRADE. APC

13

14

15                                     Lester Winograde, Esq.

16                                     Attorney's for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

5

DECLARATION OF LESTER WINOGRADE

I, LESTER WINOGRADE, declare:

1.     I am an attorney at law admitted to practice before all the Courts of the State of California.  I make this declaration in support of Plaintiffs Motion to Set-Aside Dismissal pursuant to C.C.P, §473(b).  I make this declaration from first-hand personal knowledge.  If called upon to do so, I could and would testify to the following.

2.     Plaintiffs' underlying Complaint is based on theories of lender liability and unlawful business practices by a commercial financial lender and its parent company and officers.  The Complaint was filed on May 31, 2018.   The wrongful actions of defendants in this case are related with another series of cases with the Plaintiffs and other third parties currently being litigated in Santa Monica Courthouse.

3.     The present case was filed at this time to ensure there was no statute of limitations issues with the intent to procure new counsel as I was actually involved in the underlying business matters between the parties alleged in the Complaint and he may eventually end up as a witness.

4.     As such, in June, 2018 I met counsel met with another counsel to substitute into this case and in fact gave him a signed substitution.  Thereafter, I believed the matter was being handled as I signed a substitution and left it with the counsel who I thought would substitute in the case.  I made a mistake in making assumption that the substitution occurred as the other counsel did not substitute in to the case.

5.     I thereafter neglected to follow-up on the status of the case with Plaintiff's the proposed new counsel or the court.  The Complaint was never served..  As such, this Court dismissed the case with the clerk mailing out notice on December 21, 2018 with the effective date of the dismissal being December 26, 2018.

6.     When speaking with Plaintiffs' counsel on the related matter last week, I first learned of the mistake about this case having being dismissed.  Plaintiffs desire to continue to pursue the matter and counsel in the related case has agreed to substitute into the case and serve defendants up this Motion being granted.

7.     The May 31, 2018 incorporated herein will become the operative pleading and will be diligently served upon grating of this Motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of June, 2019, at Venice, California.

_____

Lester Winograde

7

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Santa Monica Courthouse
1725 Main Street, Santa Monica, CA 90401

**FILED**
Superior Court of California
County of Los Angeles
06/19/2019

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ Darian Salisbury _____ Deputy

PLAINTIFF(S):

DAVID ZINBERG  et al

DEFENDANT(S):

HRG GROUP, INC. et al

**NOTICE OF CASE REASSIGNMENT AND ORDER FOR PLAINTIFF TO GIVE NOTICE (Dates Remain)**

CASE NUMBER:

SC129349

TO THE PLAINTIFF(S) AND PLAINTIFF'S ATTORNEY OF RECORD OR PLAINTIFF(S) IN PROPRIA PERSONA:

You are hereby notified that effective <u>06/19/2019</u>, an order was made that the above-entitled action, previously assigned to <u>Gerald  Rosenberg</u>,
is now and shall be assigned to <u>Marc D. Gross</u>
as an Individual Calendar (IC), direct calendaring judge for all purposes, including trial, in department <u>R</u> at <u>Santa Monica Courthouse</u>.
(See Chapter 3, Los Angeles Court Rules) All matters on calendar in this case will remain set on the dates previously noticed, in the department indicated above unless otherwise ordered by the court.

Notice is further given that plaintiff in propria persona or counsel for the plaintiff is ordered to give notice of this all-purpose case assignment by serving a copy of the notice on all parties to this action within 10 days of service of this notice by the court, and file proof of service thereof within 12 days of this notice. Failure to timely give notice and file proof of service may lead to imposition of sanctions pursuant to Code of Civil Procedure section 177.5 or otherwise.

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>06/19/2019</u>

By <u>Darian Salisbury</u>

Deputy Clerk

**NOTICE OF CASE REASSIGNMENT AND ORDER FOR PLAINTIFF TO GIVE NOTICE (Dates Remain)**

(Proposed LACIV 252)
LASC Approved 00-00

Local Rules Chapter 3

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Santa Monica Courthouse<br>1725 Main Street Santa Monica, CA 90401 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>06/19/2019<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Darian Salisbury _____ Deputy |
| PLAINTIFF/PETITIONER:<br>DAVID ZINBERG  et al | |
| DEFENDANT/RESPONDENT:<br>HRG GROUP, INC. et al | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>SC129349 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Reassignment and Order for Plaintiff to Give Notice upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Santa Monica, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Lester Frank Winograde
245 Main St Apt 113
SUITE 5
Venice, CA  90291-

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>06/19/2019</u>          By:  <u>Darian Salisbury</u>
                                        Deputy Clerk

**CERTIFICATE OF MAILING**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department R

**SC129349**                                                                June 20, 2019
**DAVID ZINBERG VS SALUS CAPITAL PARTNERS, LLC**                    8:30 AM
**ET AL**

Judge: Honorable Marc D. Gross            CSR: None
Judicial Assistant: P. Anyankor           ERM: None
Courtroom Assistant: A. Wiggins           Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Lester Frank Winograde

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Hearing on Ex Parte Application to Set Aside Dismissal

The matter is called for hearing.

Ex Parte Application is held.

The Court has read and considered all documents filed hereto regarding the above-captioned Hearing on Ex Parte Application, and the Court now rules as follows:

The Ex Parte Application to Set Aside Dismissal filed by DAVID ZINBERG, MARINA ZINBERG on 06/19/2019 is Granted.

The Court orders the dismissal ordered on 12/20/2018 as to the entire action set aside and vacated.

Pursuant to California Rules of Court 3.110, Order to Show Cause Re: Why Plaintiff or Plaintiff's Counsel Should Not Be Sanctioned for Failure to File Proof of Service of Summons and Complaint as to All Defendants within 60 days is scheduled for 08/19/2019 at 08:30 AM in Department R at Santa Monica Courthouse.

Order to Show Cause Re: Status of Related Cases for SC127537 and SC127539 is scheduled for 08/19/2019 at 08:30 AM in Department R at Santa Monica Courthouse.

Any oppositions are to be filed nine (9) court days, prior to the above-scheduled hearing dates.

No further notice is required.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
West District, Santa Monica Courthouse, Department R

**SC129349**                                                        August 19, 2019
**DAVID ZINBERG VS SALUS CAPITAL PARTNERS, LLC**                         8:30 AM
**ET AL**

Judge: Honorable Marc D. Gross          CSR: None
Judicial Assistant: N. Lee              ERM: None
Courtroom Assistant: C. Meeks           Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): Lester Frank Winograde

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Order to Show Cause Re: Why Plaintiff or Plaintiff's Counsel Should Not Be Sanctioned for Failure to File Proof of Service of Summons and Complaint as to All Defendants within 60 days;

Order to Show Cause Re: Status of Related Cases for SC127537 and SC129349

The matter is called for hearing.
The above referenced orders to show cause are held.

Plaintiffs' counsel states that he is still attempting to serve defendants.
Order to Show Cause Re: Why Plaintiff or Plaintiff's Counsel Should Not Be Sanctioned for Failure to File Proof of Service of Summons and Complaint as to All Defendants within 60 days is continued to 11/19/2019 at 08:30 AM in Department R at Santa Monica Courthouse.

Although plaintiffs' counsel has filed on 08/15/2019 a Notice of Related Case in this case SC129349, counsel has yet to file a Notice of Related Case in the earliest filed case SC127537 which is pending before Judge Ford in Department O.

The Order to Show Cause Re: Status of Proposed Related Cases SC127537 and SC129349 is continued as follows. Order to Show Cause Re: Status of Proposed Related Cases SC127537 and SC129349 is scheduled for 11/19/2019 at 08:30 AM in Department R at Santa Monica Courthouse.

Plaintiffs' written response to the above referenced Orders to Show Cause shall be due 5 court days prior to 11/19/2019.

Counsel for plaintiffs is to give notice.

---

Minute Order                                                        Page 1 of 1